USDC SDNY
DOCUMENT ELECTRONICALLY FILED
DOC#: _____
DATE FILED: 6/26/17

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>-against-<br><br>BENJAMIN BOAMAH,<br><br>Defendant. | 14-cr-0673 (ALC)<br><br>OPINION AND ORDER |

ANDREW L. CARTER, JR., United States District Judge:

The Government charged Benjamin Boamah with two counts of conspiring to violate the narcotics laws by conspiring to import and sell heroin in the United States. In September 2015, Boamah pled guilty to both counts of the Indictment. Boamah now desires to withdraw his guilty plea and proceed to trial. For the following reasons, the Court denies Boamah's motion to withdraw his guilty plea.

## BACKGROUND[1]

### I. Boamah's Arrest

On September 26, 2014, after being arrested in his native Ghana, Boamah was extradited to the United States pursuant to a criminal complaint charging two conspiracy counts: (1) conspiring to import heroin into the United States in violation of 21 U.S.C. §§ 952(a) and 963; and (2) conspiring to sell that heroin in the United States in violation of 21 U.S.C. §§ 841(a)(1) and 846. ECF No. 1 (Complaint); ECF No. 91 (Declaration of Benjamin Boamah ("Boamah Decl.")), at ¶ 4. On September 29, 2014, Boamah made his initial appearance before a Magistrate Judge in the Southern District of New York, together with Anthony Strazza, counsel assigned to Boamah under the Criminal Justice Act. ECF No. 9. Strazza served as Boamah's

---

[1] This recitation of facts is based on the docket in this action as well as the affidavits submitted with Boamah's motion to withdraw his guilty plea and the hearing held thereafter. *See* ECF Nos. 120, 122 (together, "Tr.").

counsel for the next year, including through motions *in limine* and other pre-trial practice, until shortly after Boamah's guilty plea.

**II.  Plea Negotiations**

In December 2014, Strazza received the Government's first plea offer. Tr. 19:1-20:17; Gov't Ex. 2 (Email dated Dec. 8, 2014, attaching proposed plea agreement). It stipulated to a Sentencing Guideline's range of between 57 and 71 months' imprisonment with no mandatory minimum sentence. Gov't Ex. 2. Strazza testified that he met with Boamah at the Metropolitan Correctional Facility ("MCC") to review the plea agreement in person, where they went through the document "paragraph by paragraph," including the three-point reduction for early acceptance of responsibility. Tr. 21:5-23:14. Boamah rejected the offer and told Strazza that he "could not accept any plea deal" because of his professional aspirations in Ghana. *Id.* 23:15-24:4.

The Government renewed this plea offer again in August 2015, after filing its motions *in limine*. Tr. 28:9-25; Gov't Ex. 3 (Email dated Aug. 21, 2015). Strazza testified that he met with Boamah again to review the agreement and that Boamah again rejected the offer, instructing Strazza to file his opposition to the Government's motions in *limine*. Tr. 29:1-14. Boamah recalled that Strazza conveyed a plea offer to him in August 2015; however, he is mistaken about the chronology and the terms of the offer. *Id.* 84:10-18. The Court credits Strazza's testimony that August 2015 was the second, not the first, time that he discussed a plea agreement with Boamah. Further, despite Boamah's contention that this plea offer provided a sentence of 63 to 78 months with no mandatory minimum, both Strazza and the Government confirmed that no such offer ever was extended to Boamah. *Compare id. and* Boamah Decl. ¶ 18, *with* Tr. 20:18-21:4.

The Government extended its final plea offer to Boamah in September 2015, one week before trial, which was scheduled to begin on September 29, 2015. Tr. 36:9-38:21; Gov't Ex. 1 (Email dated Sept. 22, 2015, attaching proposed plea agreement). The proposal first was conveyed orally after a Court conference on September 21, 2015, and then in writing the following day. *Id.* This offer included a proposed stipulated sentence of 63 to 78 months' imprisonment with a mandatory minimum of 60 months. *Id.* The agreement expired on September 23. *Id.* As a result of the timing and difficulties at the MCC, Strazza only very quickly discussed the basic terms of the plea offer with Boamah in person on September 22. Tr. 39:12-40:9.

Later that day Strazza and Boamah communicated again, either by telephone or email. *Id.* 40:10-20. By the end of the day Boamah had not reached a decision regarding his plea, but Strazza decided to have Boamah brought to court on September 23 in case he decided to plead guilty. *Id.* On September 23, Boamah and Strazza discussed the plea agreement in court prior to the scheduled plea proceeding. *Id.* 41:4-42:3, 59:15-60:17. At this point, Strazza had a written copy of the plea agreement to review with Boamah. *Id.* 63:15-21.

Strazza advised Boamah to accept the offer because he believed that "he would ultimately get a better outcome than he would have if he were to proceed to trial." *Id.* 41:20-24. Boamah responded that he wanted to plead guilty, but wanted to do so without the plea agreement, an "open plea." *Id.* 41:25-42:5. Strazza "strongly advised" against pleading guilty without a plea agreement, explaining that Boamah likely would receive a higher sentence. *Id.* 42:10-19, 43:8-22. It seemed to Strazza that Boamah did not want to waive any rights pursuant to the plea agreement, including the right to appeal and resubmit the arguments made in a *pro se*

3

motion to dismiss the Indictment. *Id.* 42:20-43:5, 45:18-23, 59:6-14. Boamah did not tell Strazza that he needed additional time to think about whether to plead guilty. *Id.* 45:6-15.

Strazza then explained the plea proceeding and the written allocution to Boamah. Boamah did not have any questions, but stated that he would not read the written allocution, despite Strazza's explanation for it. *Id.* 43:23-45:1, 63:22-64:3.

### III. Boamah's Guilty Plea

On September 23, 2015, Boamah entered a plea of guilty to both counts in the Indictment and without a plea agreement from the Government. ECF No. 59 ("Plea Tr."). During the plea proceeding, after Boamah stated that he was not in the "right state of mind," the Court engaged in a lengthy colloquy with Boamah regarding the voluntariness of his guilty plea. Plea Tr. 4:17-18. During this colloquy, it became clear that Boamah was competent to plead guilty, but was experiencing a normal amount of stress attendant to this important decision. *Id.* 4:20-7:21. In response to the Court's questions, Boamah confirmed that he understood what was happening in the plea proceeding, *id.* 6:22-25; had come to the decision to plead guilty himself, *id.* 7:1-3; and had discussed the decision to plead guilty with Strazza and understood his counsel's advice, *id.* 7:13-18. Boamah later confirmed that, notwithstanding his nerves, he understood the questions the Court put to him during his plea hearing and answered those questions truthfully. Tr. 137:13-139:9, 142:7-143:6.

The parties then discussed sentencing. Boamah stated that he had seen the Government's latest plea offer, a fact which he later confirmed again, Plea Tr. 17:18-22; Tr. 143:2-6, and that he had discussed with Strazza how the Sentencing Guidelines would apply to his case, Plea Tr. 15:25-16:17. The Government explained its revised estimate of Boamah's sentence if he chose to plead without the plea agreement. *Id.* 18:1-25. Consistent with Rule 11, the Court also

explained sentencing and the other potential penalties and collateral consequences of pleading guilty, all of which Boamah confirmed he understood. *Id.* 19:12-22:5. The Court further confirmed that Boamah understood the rights he was preserving and waiving by pleading guilty. *Id.* 23:1-25. Boamah again stated that he told Strazza he wanted an "open plea." *Id.* 23:4-5.

Finally, the Court asked Boamah whether he had any questions for either the Court or his counsel before proceeding to the guilty plea allocution itself. Boamah stated that he had no questions and declined to consult with Strazza before allocuting to the crimes. *Id.* 22:6-11. He further stated that he was satisfied with Strazza's representation. *Id.* 22:12-14.

Boamah then began his allocution. When asked by the Court what he had done that made him guilty of the charged crimes, Boamah stated that he "assisted a friend who came to Ghana" by "vouch[ing] for him" and "help[ing] him to get money for whatever he did with it." *Id.* 24:4-18. After a break requested by Strazza, Boamah began reading from the written allocution prepared by Strazza. *Id.* 24:19-26:14. The Court accepted Boamah's guilty plea and set a date for sentencing. *Id.* 27:2-6.

IV. **Post-Plea Proceedings**

Boamah did not express any dissatisfaction with Strazza's representation prior to the end of their relationship. However, Strazza acknowledged that they were becoming "further apart" in terms of strategy after the Government filed its motions *in limine* which, as Strazza explained, "introduced new evidence into the case." Tr. 12:7-17, 14:7-16, 66:15-67:4. Boamah requested new counsel during a meeting with Strazza on October 14, 2015, and, on October 21, 2015, Strazza submitted a letter to the Court seeking to be relieved as counsel. *Id.* 12:19-14:5, 62:8-22; Gov't Ex. 7 (Letter dated Oct. 21, 2015).

5

The Court granted Strazza's request and appointed Boamah's current counsel, Avrom Robin, to represent him at sentencing. ECF No. 104. The Court subsequently granted five requests by the parties to adjourn Boamah's sentencing while they attempted to resolve certain issues that would have obviated the need for a *Fatico* hearing. ECF Nos. 62, 68, 72, 74, 78. However, by letter dated August 25, 2016, Robin informed the Court that the parties had not been able to resolve the sentencing issues and would need to proceed to a *Fatico* hearing, which the Court then scheduled for September 29, 2016. ECF No. 83. Three weeks after requesting that the Court schedule a *Fatico* hearing, and nearly one year after Boamah pleaded guilty, Boamah sought leave to file a motion to withdraw his guilty plea. ECF No. 84.

## V. Boamah's Motion to Withdraw His Guilty Plea

In his motion to withdraw his guilty plea, Boamah argues that he received ineffective assistance of counsel from Strazza during the plea negotiations. ECF Nos. 90 ("Def's Memo."), 91 (Boamah Decl.), 92 (Affirmation of Avrom Robin ("Robin Aff.")). He contends that Strazza failed to convey the Government's plea offers to him, did not adequately explain the implications of pleading guilty pursuant to a plea agreement as compared to pleading without an agreement, and pressured him to plead guilty. He also asserts that Strazza only agreed to communicate with him during in-person meetings, rather than by telephone or email. The Government filed opposition to Boamah's motion, ECF No. 99 ("Gov't Memo."), and Boamah submitted a reply brief, ECF No. 106 ("Def's Reply"). After the motion was fully briefed, the Court directed Strazza to submit an affidavit responding to Boamah's allegations. In his affidavit, Strazza largely rejects Boamah's recitation of the facts. ECF No. 112 (Affidavit of Anthony Strazza ("Strazza Aff.")). The Court then held a hearing focusing on Boamah's ineffective assistance of

6

counsel arguments at which Boamah and Strazza testified. After the hearing, the Court allowed the parties to submit post-hearing briefing. ECF Nos. 124 ("Def's Ltr."); 126 ("Gov't Ltr.").

**LEGAL STANDARD**

**I.     Motions to Withdraw a Guilty Plea**

Rule 11(d)(2)(B) of the Federal Rules of Criminal Procedure allows a defendant to withdraw his guilty plea before the district court imposes a sentence if "the defendant can show a fair and just reason for requesting the withdrawal." Notwithstanding the broadness of Rule 11, courts have observed that a "guilty plea is a 'grave and solemn act,' not to be entered into or withdrawn lightly." *United States v. Rich*, 83 F. Supp. 3d 424, 430 (E.D.N.Y. 2015) (quoting *United States v. Hyde*, 520 U.S. 670, 677 (1997)). A defendant has the burden to show that there are valid grounds for withdrawing his guilty plea. *United States v. Rivernider*, 828 F.3d 91, 104 (2d Cir. 2016).

"In general, to determine whether the defendant has shown a 'fair and just reason' to justify withdrawal, a district court considers, *inter alia*: (1) whether the defendant has asserted his or her legal innocence in the motion to withdraw the guilty plea; (2) the amount of time that has elapsed between the plea and the motion . . . ; and (3) whether the government would be prejudiced by a withdrawal of the plea." *United States v. Schmidt*, 373 F.3d 100, 102-03 (2d Cir. 2004). A court also considers "whether the defendant has raised a significant question about the voluntariness of the original plea." *Id.* at 103 (internal quotation marks and alterations omitted).

**II.    Ineffective Assistance of Counsel**

Ineffective assistance of counsel may render a guilty plea involuntary. *See United States v. Arteca*, 411 F.3d 315, 320 (2d Cir. 2005); *Ventura v. Meachum*, 957 F.2d 1048, 1058 (2d Cir. 1992). Claims of ineffective assistance of counsel in this context are governed by the Supreme

Court's test from *Strickland v. Washington*, 466 U.S. 668 (1984), which requires a defendant to establish that: (1) counsel's representation "fell below an objective standard of reasonableness" as measured under "prevailing professional norms;" and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 688, 694.

In the plea context, when evaluating counsel's performance under the first prong of the *Strickland* standard, "attorneys must, at the very least, communicate the terms of a plea offer to their clients." *United States v. Nunez-Polanco*, 20 F. Supp. 3d 473, 479 (S.D.N.Y. 2014) (citing *United States v. Brown*, 623 F.3d 104, 112 (2d Cir. 2010)); *see also Missouri v. Frye*, 566 U.S. 133, 145 (2012) ("[D]efense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused."). This includes the obligation to inform the client "about the considerations that are relevant to her client's decision to accept or deny a plea bargain." *Davis v. Greiner*, 428 F.3d 81, 88 (2d Cir. 2005); *accord Purdy v. United States*, 208 F.3d 41, 44-45 (2d Cir. 2000).

The showing required under the second *Strickland* prong depends on whether the defendant has accepted or rejected the plea offer based on alleged ineffective assistance of counsel. A defendant who has rejected a plea offer "must demonstrate a reasonable probability [he] would have accepted the earlier plea offer had [he] been afforded effective assistance of counsel." *Frye*, 566 U.S. at 147. The defendant "must also demonstrate a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it." *Id.*

If, instead, the defendant chose to plead guilty, he must prove that, but for counsel's mistakes, he would have rejected the plea offer and proceeded to trial. *See Arteca*, 411 F.3d at

8

320 (citing *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). The defendant must also show "that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010). In making this determination, courts consider a number of factors, including whether (1) the defendant knew "that the advice on which he claims to have relied might be incorrect;" (2) pleading guilty led to more lenient sentencing; (3) "the defendant advanced any basis for doubting the strength of the government's case against him; and (4) the Government could have prosecuted the defendant on additional counts. *Chhabra v. United States*, 720 F.3d 395, 408 (2d Cir. 2013)

## DISCUSSION

I. **Boamah's Guilty Plea Was Voluntary**

A. **Boamah Did Not Receive Ineffective Assistance of Counsel**

Boamah's primary argument in support of his motion to withdraw his guilty plea is that he received ineffective assistance of counsel from Strazza, which rendered his guilty plea involuntary. In particular, Boamah argues that Strazza did not advise him of the Government's first plea offer and, upon receiving a new, worse plea offer, did not explain the benefits of pleading guilty pursuant to this offer rather than entering an "open" plea, as Boamah ultimately chose to do.[2] For the reasons discussed, the Court finds that Strazza did not provide Boamah with ineffective assistance and, even if he did, Boamah has failed to show any resulting prejudice.

---

[2] Boamah also describes certain other alleged shortcomings in Strazza's representation: his decision not to communicate with clients over the telephone or email, in favor of in-person meetings, and his decision not to take notes during client meetings. *See* Def's Ltr. at 2. The parties agree that, during the approximately one year that Strazza represented Boamah, he visited Boamah at the MCC between five and ten times in addition to meeting with him in court. Tr. 53:23-25, 119:9-19. Even assuming that the decision to communicate with Boamah in this way "fell below an objective standard of reasonableness," Boamah does not argue that it had any specific prejudicial impact.

9

First, the Court rejects Boamah's testimony that Strazza's advice with respect to plea negotiations and the decision to plead guilty "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. The Court credits Strazza's testimony—which is corroborated by contemporaneous email correspondence—that he conveyed all of the Government's plea offers to Boamah and properly advised him regarding their terms. As an initial matter, Boamah appears to take issue with Strazza's failure to convey any plea offer until after Boamah filed his *pro se* motion to dismiss the Indictment in November 2014. Boamah Decl. ¶ 9. However, the record reflects that the Government did not extend any plea offers until December 2014; that is, after Boamah's *pro se* motion. Strazza Aff. ¶ 8; Tr. 19:1-19; Gov't Ex. 2 (Email dated Dec. 8, 2014, attaching proposed plea agreement). Strazza cannot be faulted for failing to convey a plea offer that did not exist. Similarly, Strazza cannot be faulted for failing to accept the terms of a deal that both the Government and Strazza assert never was extended. *Compare* Tr. 26:22-27:11 *and* Gov't Memo. at 8 n.4, *with* Boamah Decl. ¶¶ 12-13 (describing offer of "time served").

Regarding the Government's first plea offer, Boamah and Strazza disagree as to whether Strazza reviewed its terms with Boamah. The Court finds that Strazza's testimony on this point is more credible. Strazza testified that he reviewed the offer with Boamah on multiple occasions, during which he went through the agreement "paragraph by paragraph," including the three-point reduction for early acceptance of responsibility. Tr. 21:5-23:14; *see also id.* 28:9-29:10, 57:17-58:8; Strazza Aff. ¶¶ 7, 12. His testimony is corroborated by emails with the Government as to the terms of the plea offer and Boamah's decision to reject it. *See* Gov't Exs. 2 (Email dated Dec. 8, 2014, attaching proposed plea agreement), 3 (Email dated Aug. 21, 2015). By contrast,

10

Boamah's testimony that Strazza withheld plea offers from him is inconsistent with Boamah's theory that Strazza pressured him to plead guilty.

Their testimony more closely aligns with respect to the Government's next plea offer, extended in September 2015. *See* Gov't Ex. 1 (Email dated Sept. 22, 2015, attaching proposed plea agreement). Strazza and Boamah agree that the Government gave Boamah only a short period of time—one day—to decide whether to accept this new offer. Boamah Decl. ¶¶ 20-21; Strazza Aff. ¶ 14. Strazza's inability to provide Boamah with a hard copy of the plea agreement until the day of the plea proceeding does not constitute ineffective assistance of counsel; Strazza did not receive a written plea offer until the evening of September 22 and, in any event, Strazza only needed to "communicate to the defendant the terms of the plea offer" to Boamah, which he did. *Purdy v. United States*, 208 F.3d 41, 45 (2d Cir. 2000). Accordingly, any resulting pressure on Boamah to make a decision about whether to plead guilty was not of Strazza's making.

The parties also agree that Strazza advised Boamah to accept this offer. Tr. 41:20-24, 149:10-13. They further agree that, when Boamah arrived in court on the day of his plea proceeding, he told Strazza that he wanted to take an "open plea," and Strazza advised against it. Boamah Decl. ¶ 27; Strazza Aff. ¶ 17; Tr. 41:25-43:22, 148:7-150:13. Strazza testified that he counseled Boamah regarding the potential exposure to a higher sentence, but that Boamah was concerned about waiving his rights under the plea agreement. Tr. 42:12-24; Strazza Aff. ¶ 17. Boamah's contention that Strazza did not explain certain other, unidentified consequences of pleading guilty without a plea agreement fails to satisfy his burden under the first *Strickland* prong to prove that Strazza's conduct fell below an objective standard of reasonableness. *See* Boamah Decl. ¶ 28.[3]

---

[3] In the hearing on this motion, Boamah for the first time raised a concern regarding Strazza's advice on the potential consequences of his guilty plea on his U.S. visa or visa application, which Boamah believes was

11

With regard to pleading guilty, generally, Boamah also asserts that Strazza never discussed cooperation or safety valve relief with him. Tr. 121:9-12. Boamah concedes that he understood these concepts, but learned about them by doing his own "research," including talking to other inmates, and never asked Strazza any questions. Tr. 120:24-121:21, 123:16-124:4; Plea Tr. 5:17-23. Strazza testified that he did, in fact, explain these options to Boamah. Tr. 24:8-25:11, 50:23-51:15. The Court finds that Strazza's version of the facts is more believable; Boamah clearly understood the concepts and it is incredible that Boamah would have discussed potential cooperation with other inmates.

Second, even assuming Strazza's representation failed to satisfy "prevailing professional norms," Boamah has not shown that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Boamah cannot show prejudice because he concedes that he chose to plead guilty without the benefit of a plea

---

cancelled when he was extradited to the United States from Ghana. Tr. 101:2-16, 150:21-152:1, 158:22-161:22. It is not clear whether Boamah's oblique reference to consequences includes the impact to his visa, but the Court will briefly address that argument here. A lawyer "must inform her client whether his plea carries a risk of deportation." *Padilla*, 559 U.S. at 374. Strazza testified that, at the beginning of his representation, he advised Boamah that he would be deported following a conviction, but Boamah "wanted to go home," having been extradited from Ghana, so "[i]t wasn't really an issue." Tr. 70:25-71:9. The Court credits Strazza's testimony over Boamah's on this point. It is clear from Boamah's testimony that he understood his visa had been cancelled and that he faced deportation following a guilty plea pursuant to the Government's plea offer. Moreover, during his plea hearing, Boamah confirmed to the Court that Strazza had advised him regarding the immigration consequences of his plea—with or without a plea agreement. Plea Tr. at 21:11-22:2. Boamah simply misremembers what happened during the plea hearing: he answered the Court's questions on this topic affirmatively, and, accordingly, his answers did not precipitate Strazza requesting a break to discuss the matter further. *Compare id., with* Tr. 159:16-160:14. Even if the Court accepted Boamah's testimony, Boamah would have a difficult time showing prejudice. By his own testimony, his decision to plead guilty without a plea agreement was motivated by several factors, only one of which was deportation. He has not shown, or even argued, that deportation was the determinative factor underlying his decision. Accordingly, he cannot show that, but for any failing by Strazza, he would have decided to proceed to trial. He also has not, and could not, argue that with better advice on immigration, he would have accepted the Government's plea offer, which he understood correctly to carry adverse immigration consequences. Finally, the Court rejects any implicit argument that Strazza was ineffective for failing to advise Boamah that, after his guilty plea, his visa would not be reinstated. It is not clear why Boamah had the misimpression that his cancelled visa might be reinstated following an open plea. He does not contend that Strazza told him this nor does he contend that he raised this idea to Strazza, who then could have corrected any misimpression. An attorney is not required to guess his or her client's every potential misconception of the law in order to advise them properly. *Cf. Martinez v. Capra*, No. 13-cv-657 (RA) (RLE), 2016 WL 127587, at *4 (S.D.N.Y. Jan. 11, 2016) (after counsel heard client's wrong impression, he corrected it), *aff'd*, 2017 WL 129150 (2d Cir. Jan. 12, 2017).

agreement against advice of counsel and with the understanding that he could have pleaded guilty pursuant to an agreement with the Government. Tr. 135:19-136:19. He further concedes that, despite Strazza's advice, he chose to plead guilty without a plea agreement after doing his own research and consulting with his wife and other inmates. Tr. 148:7-149:16. In particular, he did not want to waive certain rights pursuant to the plea agreement and was displeased that his co-defendant's plea offer did not include a mandatory minimum sentence. Boamah Decl. ¶ 27; Strazza Aff. ¶ 17; Tr. 150:14-151:17. That Boamah now wishes he had followed the advice of his counsel rather than the jailhouse lawyers does not suffice to show prejudice.

Moreover, the Court is "entitled to rely upon the defendant's sworn statements, made in open court . . . , that he understood the consequences of his plea, had discussed the plea with his attorney, knew that he could not withdraw the plea, understood that he was waiving [certain rights]," and was satisfied with his counsel. *United States v. Hernandez*, 242 F.3d 110, 112 (2d Cir. 2001); *accord United States v. Juncal*, 245 F.3d 166, 171 (2d Cir. 2001) (statements during plea allocution have "such a strong presumption of accuracy that a district court does not, absent a substantial reason to find otherwise, abuse its discretion in discrediting later self-serving and contradictory testimony as to whether a plea was knowingly and intelligently made"). That is particularly true here, given Boamah's more recent testimony that he understood the questions the Court put to him during his plea hearing and answered those questions truthfully. Tr. 138:20-139:9, 142:7-143:6. During his guilty plea allocution, Boamah confirmed that he had discussed his decision to plead guilty with Strazza, but that the decision to plead guilty without a plea agreement was his alone. Plea Tr. 7:1-18. He further confirmed that he understood the various rights he was preserving and giving up by pleading guilty. *Id.* 23:9-19. Both the Court and the Government explained Boamah's sentencing exposure to him. The Court also advised Boamah

him about the other potential penalties and collateral consequences of pleading guilty. *Id.* 18:1-25, 19:12-21:15.

## B. Other Alleged Pressure

While Boamah focuses his argument regarding the voluntariness of his plea on his ineffective assistance of counsel argument, Boamah has not met his burden to show that his plea was involuntary for any other reason. In addition to his ineffective assistance of counsel arguments, Boamah vaguely refers to "pressure" from Strazza to plead guilty and the fact that Strazza gave him a written allocution to read during his plea hearing.

The Court will not vacate Boamah's guilty plea on the basis of his references to amorphous pressure from Strazza. *See* Robin Aff. ¶ 11; Boamah Decl. ¶ 19. As discussed above, the time pressure Boamah faced when deciding whether to accept the Government's final plea offer was not of Strazza's making. Nor is Strazza's advice to accept the Government's offer, without more, evidence of improper pressure. Strazza testified that, based on his assessment of the strength of the Government's case, he advised Boamah to plead guilty pursuant to the Government's plea offer. Such advice is not only appropriate, but warranted. *See Davis*, 428 F.3d at 88. Apart from Strazza allegedly telling Boamah that, as "a black man from Africa" who "[does] not have an American passport," he could not win at trial, Boamah has not offered any evidence of pressure from Strazza. Boamah Decl. ¶ 11. Strazza denies making this statement or saying anything similar, and the Court finds his testimony credible. Tr. 26:10-21. Boamah contends that Strazza made this comment to him in December 2014, yet he never raised this issue with the Court. *See id.* 129:8-21. Moreover, Boamah acknowledges that, at the time, he disagreed with Strazza's alleged assessment in this regard. *Id.* 82:5-15. To the extent

Boamah describes any actual pressure to plead guilty, this pressure appears to have come from his family, not from counsel. *Id.* 136:6-19.

The written allocution Boamah read at his plea hearing also does not render his guilty plea involuntary. Strazza testified that he often prepares written guilty plea scripts so that his clients can be sure they properly allocute to each element of the charged crimes. Strazza Aff. ¶¶ 18-19; Tr. 44:5-20. It was entirely appropriate for Strazza to do so here. *See, e.g., Fernandez v. United States*, No. 12-cr-445 (JMF), 2016 WL 4735370, at *4 n.2 (S.D.N.Y. Sept. 12, 2016) (noting that counsel often prepare written statements describing factual basis for guilty plea) (collecting cases); *Johson v. Smith*, No. 08-cv-2979 (ENV), 2014 WL 1514354, at *6 (E.D.N.Y. Apr. 16, 2014) (describing plea script as "ordinary action[] taken by defense lawyers"). While Strazza and Boamah agree that Boamah initially did not want to read the prepared statement, when Boamah began allocuting rather vaguely to his crimes, Strazza asked for a break, after which Boamah began to read from the script. Tr. 44:21-45:1, 48:1-19, 87:20-88:25. Having observed Boamah read from the prepared statement at his allocution, there was no apparent pressure being exerted on Boamah to do so. Additionally, during the plea proceeding, the Court asked Boamah a number of questions, the answers to which confirmed Boamah's guilt and which did not appear to be read from a script. Plea Tr. 25:23-26:14. Most notably, however, in making his argument now, Boamah does not contend that anything he said while reading this allocution was false.

For all of these reasons, the Court finds that Boamah's guilty plea was knowing and voluntary.

## II. Boamah Is Not Otherwise Entitled to Withdraw His Guilty Plea

Considering the other ways in which Boamah might have a "fair and just" reason to withdraw his guilty plea also counsels against granting Boamah's motion. Two of the three factors weigh against allowing Boamah to withdraw his guilty plea, and the third factor is relatively neutral. First, despite his attorney's statements to the contrary, Boamah has not asserted his innocence here. Second, a considerable amount of time elapsed between Boamah's guilty plea and his first expression of a desire to withdraw that plea. Third, however, the Government would not be significantly prejudiced by a withdrawal of the plea.

The first factor—claims of innocence—cuts against allowing Boamah to withdraw his guilty plea. While Boamah's counsel argues that Boamah is claiming actual innocence, *see* Def's Memo. at 5, Boamah said no such thing in his affidavit. Nor did he assert that he is innocent of the charged crimes during the hearing. Moreover, according to the Government's account of Boamah's safety-valve proffer session, which Boamah does not contest, Boamah again conceded his guilt for the charged crimes, stating that his involvement in the conspiracy did not begin until April 2012. Gov't Memo. at 12. While, as Boamah suggests, a motion to withdraw a guilty plea might indicate a belief in one's innocence, there are numerous other explanations for the decision that are inconsistent with actual innocence. Def's Memo. at 5.

Here, the sequence of events leading to Boamah's guilty plea and subsequent decision to withdraw that plea suggest an alternative narrative. Boamah decided to plead guilty two days after the Court granted the Government's motion *in limine* to offer at trial as relevant conduct testimony regarding earlier, uncharged narcotics transactions in which Boamah allegedly participated. ECF No. 55. Because Boamah chose to plead guilty without a plea agreement, the question of this earlier conduct remained an issue both for safety valve relief and determining the

16

total weight of the narcotics for purposes of calculating the range of Boamah's sentence under the Sentencing Guidelines. With Strazza still serving as his counsel, Boamah declined to participate in a safety valve proffer, in favor of challenging the uncharged conduct at a *Fatico* hearing. Tr. 49:21-51:25; Gov't Ex. 8 (Emails dated Sept. 30 to Oct. 7, 2015). After the Court relieved Strazza and appointed new counsel for Boamah, Boamah decided to participate in a safety valve proffer. At Boamah's safety valve proffer session, the Government asked him about this earlier conduct, and while Boamah denied any involvement in the uncharged conduct, he did not deny his participation in the conspiracy outright. Gov't Memo. at 12, 18-19.

Then, after nine months of unsuccessful attempts to reach an agreement with the Government that could have obviated the need for a *Fatico* hearing, Boamah realized that the Government would be presenting evidence of the uncharged conduct at the now-scheduled *Fatico* hearing. It seems that Boamah decided, at that point, he might as well proceed to trial. *See* Def's Memo. at 4-5. This narrative is not indicative of actual innocence so much as it suggests Boamah wanted to avoid evidence of the earlier, uncharged conduct, and thought he could reach an agreement with the Government that would allow him to avoid a *Fatico* hearing while also preserving his right to appeal any sentence imposed by the Court. *See* Tr. 51:2-4 ("[I]t seemed to [Strazza] like he was trying to plead guilty without making admissions."). This narrative is consistent with testimony at the hearing regarding Boamah's aspirations in Ghana following the conclusion of this criminal case, Tr. 23:15-24:4, 99:2-12, and a corresponding desire to accept guilt for the most limited scope of criminal conduct possible. Given this, the Court is concerned that granting Boamah's motion would "degrade the otherwise serious act of pleading guilty into something akin to a move in a game of chess." *Hyde*, 520 U.S. at 677.

The second factor—the amount of time that has elapsed—also weighs against granting Boamah's motion to withdraw his guilty plea. Courts have held that delays of far less time weighed against a defendant. *See, e.g., United States v. Obiorah*, 536 F. App'x 53, 55 (2d Cir. 2013) (eight months) (citing, *inter alia*, *United States v. Grimes*, 225 F.3d 254, 259 (2d Cir. 2000) (five months)); *United States v. Wilson*, 828 F. Supp. 2d 679, 685 (S.D.N.Y. 2011) (two months), *aff'd*, 523 F. App'x 30 (2d Cir. 2013); *United States v. Baum*, 380 F. Supp. 2d 187, 206-07 (S.D.N.Y.), *aff'd sub nom. United States v. Best*, 139 F. App'x 366 (2d Cir. 2005) (three and a half months). While, in his brief, Boamah provides an explanation for the year that elapsed between his guilty plea and the instant motion, nothing about his explanation suggests that his plea was not knowing and voluntary. Rather, he asserts that the delay was a result of him "attempting to live with and accept the consequences of his guilty plea." Def's Memo. at 4.[4] "A change of heart does not suffice." *Rich*, 83 F. Supp. 3d at 430.

Because both the first and second factors weigh against allowing Boamah to withdraw his guilty plea, the Government is not required to make any showing with respect to the third and final factor—prejudice to the Government. *United States v. Torres*, 129 F.3d 710, 715 (2d Cir. 1997). Therefore, the Court only briefly notes that, under the present circumstances, this factor is relatively neutral. Generally, this factor will weigh in favor of the Government where withdrawing the guilty plea would force the Government to quickly prepare for a trial it did not anticipate having to prosecute. *See United States v. Lopez*, 385 F.3d 245, 254 (2d Cir. 2004). Here, however, Boamah entered his guilty plea only six days before the trial in this matter was scheduled to begin. The Government, therefore, had already done much of the preparatory work that it would have to do now, were the Court to grant Boamah's motion. However, as the

---

[4] Further, while this explanation appears in Boamah's counseled brief, it is not based on anything in Boamah's accompanying affidavit nor did Boamah provide any testimony to this effect during the hearing.

18

Government notes, it would be forced to duplicate expenditures and, in the time that has elapsed since the Government first thought it was going to trial, memories may have faded. Gov't Memo. at 25-26; *see also, e.g.*, *Baum*, 380 F. Supp. 2d at 207 (modest prejudice to prepare witnesses again).

Therefore, the balance of the factors weighs against granting Boamah's motion to withdraw his guilty plea.

## CONCLUSION

For all of the foregoing reasons, Boamah's motion to withdraw his guilty plea is denied.

**SO ORDERED.**

Dated: June 26, 2017
New York, New York

       **ANDREW L. CARTER, JR.**
       **United States District Judge**